UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

CHRISTOPHER OROS,

        Petitioner,               Case No. 1:19-cv-535

v.                                        Honorable Paul L. Maloney

MARK MCCULLICK,

        Respondent.
_____ /

## **OPINION**

        This is a habeas corpus action brought by a state prisoner under 28 U.S.C. § 2254. Promptly after the filing of a petition for habeas corpus, the Court must undertake a preliminary review of the petition to determine whether "it plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court." Rule 4, Rules Governing § 2254 Cases; *see* 28 U.S.C. § 2243. If so, the petition must be summarily dismissed. Rule 4; *see Allen v. Perini*, 424 F.2d 134, 141 (6th Cir. 1970) (district court has the duty to "screen out" petitions that lack merit on their face). A dismissal under Rule 4 includes those petitions which raise legally frivolous claims, as well as those containing factual allegations that are palpably incredible or false. *Carson v. Burke*, 178 F.3d 434, 436-37 (6th Cir. 1999). After undertaking the review required by Rule 4, the Court concludes that the petition must be dismissed because it fails to raise a meritorious federal claim.

## Discussion

### I. Factual allegations

Petitioner Christopher Oros is incarcerated with the Michigan Department of Corrections at the St. Louis Correctional Facility (SLF) in St. Louis, Michigan.. Following a six-day jury trial in the Kalamazoo County Circuit Court, Petitioner was convicted of first-degree premeditated murder in violation of Mich. Comp. Laws § 750.316(1)(a), first-degree felony murder in violation of Mich. Comp. Laws § 750.316(1)(b), first-degree arson in violation of Mich. Comp. Laws § 750.72, second-degree home invasion in violation of Mich. Comp. Laws § 750.110a(3), and escape while awaiting trial in violation of Mich. Comp. Laws § 750.197(2). On August 24, 2015, the court sentenced Petitioner as a habitual offender-second offense, Mich. Comp. Laws § 769.10, to respective prison terms of life without the possibility of parole for the murder convictions, 25 to 40 years for the arson conviction, 10 years to 22 years, 6 months for the home invasion conviction, and 2 to 6 years for the escape conviction.

On July 3, 2019, Petitioner timely filed his habeas corpus petition raising three grounds for relief, as follows:

> I. The prosecution failed to produce legally sufficient evidence of premeditation and deliberation and malice.
>
> II. Mitigating circumstances reduced Petitioner's culpability for the victim's death.
>
> III. The felony-murder instruction was erroneous in that it instructed the jury that "false pretenses" could serve as the felony to support a felony murder conviction.

(Pet., ECF No. 1, PageID.5, 7-8.)

The facts underlying Petitioner's prosecution were summarized by the Michigan Court of Appeals as follows:

> On November 22, 2014, emergency personnel responded to a fire at the apartment complex of the victim, Marie McMillan, in Kalamazoo, Michigan. The responders extinguished the fire and discovered the victim's body on a bed in her bedroom. Testimony from first responders indicated that someone had piled items over her body and set them on fire. An autopsy determined that the victim had died before the fire was set as a result of multiple stab wounds.
>
> Police officers learned that a man had been knocking on the apartment doors of the apartments of the victim's neighbors throughout the day of the fire and using a fake story to solicit money. He told the residents that his girlfriend had left with his car, debit card, and cell phone. He then asked to use the person's phone, and, if allowed to do so, he made a call that went unanswered. After the "unsuccessful" call, he would directly or indirectly solicited [sic] money from the resident.
>
> Officers determined that the number this man called from the residents' phones was associated with defendant. They also learned that a call had been made to that number from the victim's phone. The officers tracked defendant down at the apartment he shared with his girlfriend, Robin Wiley, Battle Creek, Michigan. When officers arrived, defendant unsuccessfully attempted to flee. After defendant was arrested, he was interrogated. During the interrogation, defendant admitted that he had gotten the victim to let him into her apartment and that he used her phone. He claimed that she then attacked him without provocation by hitting him on the head with a coffee mug and that she sat on top of him with a "huge knife in her hand." He said that he and the victim struggled for control of the knife and he gained control of it. Defendant then began stabbing the victim, first in the stomach, and then, after getting on the victim's back, in the neck and other parts of her body. There were 29 stab wounds in all.
>
> Defendant was charged with both first-degree premeditated murder and felony murder. At trial, defendant argued that he was not guilty of murder because he killed the victim in self-defense. In the alternative, he argued that there were mitigating circumstances that reduced his culpability for her death. The jury rejected his defenses and found him guilty . . . .

*People v. Oros*, 904 N.W.2d 209, 213 (Mich. Ct. App. 2017).

Petitioner appealed his convictions and sentences to the Michigan Court of Appeals raising seven issues including each of his habeas issues. The Michigan Court of Appeals agreed with Petitioner that there was insufficient evidence of premeditation and deliberation and, therefore, Petitioner's first-degree premeditated murder conviction was properly reduced to second-degree murder. The Michigan Court of Appeals also agreed with Petitioner regarding the felony murder instruction—false pretenses was not a proper foundation for a felony murder

conviction. The appellate court reversed that conviction and remanded for retrial on the felony murder charge. The court's decision afforded Petitioner some relief as to each of the issues he raises in his habeas petition.

The prosecutor filed an application for leave to appeal the court of appeals' decision in the Michigan Supreme Court. The supreme court heard oral argument on the application and, in lieu of granting leave to appeal, a five-justice majority concluded the court of appeals had erred with regard to the sufficiency of the evidence supporting the first-degree premeditated murder conviction. By opinion issued July 5, 2018, the supreme court reversed that part of the court of appeals' opinion and reinstated Petitioner's first-degree premeditated murder conviction. *People v. Oros*, 917 N.W.2d 229 Mich. (2018). This petition followed.

## II. AEDPA standard

This action is governed by the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. 104-132, 110 Stat. 1214 (AEDPA). The AEDPA "prevents federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law. *Bell v. Cone*, 535 U.S. 685, 693-94 (2002). An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d). This standard is "intentionally difficult to meet." *Woods v. Donald*, 575 U.S. __, 135 S. Ct. 1372, 1376 (2015) (internal quotation omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). This Court may consider only the holdings, and not the dicta, of the

4

Supreme Court. *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001). In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts. *Lopez v. Smith*, 574 U.S. 1, 4 (2014); *Marshall v Rodgers*, 569 U.S. 58, 64 (2013); *Parker v Matthews*, 567 U.S. 37, 48-49 (2012); *Williams*, 529 U.S. at 381-82; *Miller v. Straub*, 299 F.3d 570, 578-79 (6th Cir. 2002). Moreover, "clearly established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state court. *Greene v. Fisher*, 565 U.S. 34, 37-38 (2011). Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time of the state-court adjudication on the merits. *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 565 U.S. at 38).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts. *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405-06). "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*, 135 S. Ct. at 1376 (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)). In other words, "[w]here the precise contours of the right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims." *White v. Woodall*, 572 U.S. 415, 424 (2014) (internal quotations omitted).

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Davis v. Lafler*, 658 F.3d 525, 531 (6th Cir. 2011) (*en banc*); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey*, 271 F.3d at 656. This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

### III. Felony Murder

Petitioner attaches to his petition a report from the Michigan Department of Corrections' (MDOC's) Offender Tracking Information System (OTIS). (ECF No. 1-1, PageID.31-33.) The report lists each of the convictions and sentences under which Petitioner is presently incarcerated. The fourth conviction and sentence listed is the first-degree murder conviction based on the theory of felony murder; the fifth is the first-degree murder conviction based on the theory of premeditated murder.

The fact that both first-degree murder convictions and sentences are listed is questionable for a couple of reasons. First, the Michigan Court of Appeals has concluded "dual convictions arising from the death of a single victim violate double jeopardy." *People v. Bigelow*, 581 N.W.2d 744, 745 (Mich. Ct. App. 1998). To remedy such a violation, "'the appropriate remedy . . . is to modify [the] defendant's judgment of conviction and sentence to specify that [the] defendant's conviction is for one count and one sentence of first-degree murder supported by two theories: premeditated murder and felony murder.'" *Id*. at 745-46. The MDOC report suggests that the double jeopardy problem in Petitioner's case was not remedied as *Bigelow* requires.

6

The listing of both convictions and sentences is also troubling because the Michigan Court of Appeals vacated Petitioner's first-degree murder conviction that was based on the felony murder theory. *People v. Oros*, 904 N.W.2d at 221. The Michigan Supreme Court let that part of the court of appeals' decision stand. *People v. Oros*, 917 N.W.2d at 559. Because the supreme court revived the first-degree premeditated murder conviction and sentence, the court of appeals' remand for retrial on the felony murder charge was effectively mooted.

To the extent Petitioner is challenging the MDOC's execution of the state court's judgment, he has not exhausted that claim in the state court. Before the court may grant habeas relief to a state prisoner, the prisoner must exhaust remedies available in the state courts. 28 U.S.C. § 2254(b)(1); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). Exhaustion requires a petitioner to "fairly present" federal claims so that state courts have a "fair opportunity" to apply controlling legal principles to the facts bearing upon a petitioner's constitutional claim. *See O'Sullivan*, 526 U.S. at 842; *Picard v. Connor*, 404 U.S. 270, 275-77 (1971) (cited by *Duncan v. Henry*, 513 U.S. 364, 365 (1995) and *Anderson v. Harless*, 459 U.S. 4, 6 (1982)). To fulfill the exhaustion requirement, a petitioner must have fairly presented his federal claims to all levels of the state appellate system, including the state's highest court. *Duncan*, 513 U.S. at 365-66; *Wagner v. Smith*, 581 F.3d 410, 414 (6th Cir. 2009); *Hafley v. Sowders*, 902 F.2d 480, 483 (6th Cir. 1990). "[S]tate prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan*, 526 U.S. at 845. Although Petitioner has challenged the felony murder judgment of conviction and sentence based on the jury instruction, he has never challenged the MDOC's execution of the sentence.

To the extent Petitioner is reiterating his constitutional challenge to the felony murder conviction—a claim that he exhausted in the state courts—this Court cannot provide relief. "[S]tate prisoners cannot pursue post-conviction relief in federal court for federal claims for which the state court already granted such relief." *Hicks v. Straub*, 377 F.3d 538, 558 n.17 (6th Cir. 2004) abrogated on other grounds by *Guilmette v. Howes*, 624 F.3d 286 (6th Cir. 2010). Certainly, with regard to such a claim, Petitioner cannot carry his burden to establish that the state court's determination of this issue was contrary to, or involved an unreasonable application of, clearly established federal law. Accordingly, Petitioner is not entitled to habeas relief on this claim.

## IV. Sufficiency of the Evidence

A § 2254 challenge to the sufficiency of the evidence is governed by the standard set forth by the Supreme Court in *Jackson v. Virginia*, 443 U.S. 307, 319 (1979), which is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." This standard of review recognizes the trier of fact's responsibility to resolve reasonable conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Id.* Issues of credibility may not be reviewed by the habeas court under this standard. *See Herrera v. Collins*, 506 U.S. 390, 401-02 (1993). Rather, the habeas court is required to examine the evidence supporting the conviction, in the light most favorable to the prosecution, with specific reference to the elements of the crime as established by state law. *Jackson*, 443 U.S. at 324 n.16; *Allen v. Redman*, 858 F.2d 1194, 1196-97 (6th Cir. 1988).

The *Jackson v. Virginia* standard "gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319. Moreover, because both

8

the *Jackson* standard and AEDPA apply to Petitioner's claims, "the law commands deference at two levels in this case: First, deference should be given to the trier-of-fact's verdict, as contemplated by *Jackson*; second, deference should be given to the Michigan Court of Appeals' consideration of the trier-of-fact's verdict, as dictated by AEDPA." *Tucker v. Palmer*, 541 F.3d 652, 656 (6th Cir. 2008). This standard erects "'a nearly insurmountable hurdle'" for petitioners who seek habeas relief on sufficiency-of-the-evidence grounds. *Davis*, 658 F.3d at 534 (quoting *United States v. Oros*, 578 F.3d 703, 710 (7th Cir. 2009)).

In resolving the prosecution's application for leave to appeal, the Michigan Supreme Court explained the sufficiency standard as follows:

> "In determining whether sufficient evidence exists to sustain a conviction, this Court reviews the evidence in the light most favorable to the prosecution, and considers whether there was sufficient evidence to justify a rational trier of fact in finding guilt beyond a reasonable doubt." *People v. Harris*, 495 Mich. 120, 126, 845 N.W.2d 477 (2014). But more importantly, "[t]he standard of review is deferential: a reviewing court is required to draw all reasonable inferences and make credibility choices in support of the jury verdict. The scope of review is the same whether the evidence is direct or circumstantial. Circumstantial evidence and reasonable inferences arising from that evidence can constitute satisfactory proof of the elements of a crime." *People v. Nowack*, 462 Mich. 392, 400, 614 N.W.2d 78 (2000) (quotation marks and citation omitted; emphasis added). "It is for the trier of fact, not the appellate court, to determine what inferences may be fairly drawn from the evidence and to determine the weight to be accorded those inferences." *People v. Hardiman*, 466 Mich. 417, 428, 646 N.W.2d 158 (2002) (emphasis added).

*Oros*, 917 N.W.2d at 564.[1] The Supreme Court then applied the standard as *Jackson v. Virginia* directs: the court identified the elements of the offense, viewed the evidence in a light favorable to the prosecution, and drew reasonable inferences in the same light. The court identified the key

---

[1] Although the supreme court majority cited only state authorities as the source for the standard, the state court authorities ultimately rely on *Jackson v. Virginia*. *See Harris*, 845 N.W.2d at 482, citing *People v. Sherman-Huffman*, 642 N.W.2d 339 (Mich. 2002), citing *People v. Wolfe*, 489 N.W.2d 748, 751 (Mich. 1992), citing *Jackson v. Virginia*.

elements as premeditation and deliberation and, with regard to those elements, described the evidence and reasonable inferences therefrom as follows:

> Defendant first told the lead detective that there were two men in the victim's apartment who struck him in the head with a stick and that he was able to run away without incident. According to the detective, defendant then changed his story and admitted that the victim allowed him to come inside her apartment. Once inside, defendant sat at a computer desk to use the telephone. At that point, defendant claimed that the victim struck him over the head with a coffee mug, knocking him to the ground, and climbed on top of him with "a huge knife in her hand." Defendant stated that he was pinned down on the ground by the victim for two hours. A struggle ensued, and at some point, defendant stated that he was able to gain control of the knife. While holding the knife in one hand, defendant punched the victim in the face with his other fist. He then proceeded to stab the victim in the stomach.
>
> The prosecution presented evidence that directly conflicted with defendant's description of what transpired in the apartment. That evidence included the following: (1) defendant did not have any head injuries consistent with his claim that the victim struck him over the head with a coffee mug, and (2) shattered pieces of the coffee mug collected at the scene were DNA tested, revealing the presence of the victim's blood and hair—not defendant's. The jury chose to resolve the conflicting evidence in favor of the prosecution. *See Hardiman*, 466 Mich. at 431, 646 N.W.2d 158 (stating that it is the jury's function to weigh competing evidence). On appellate review, we accept as true the evidence contradicting defendant's version of the crime, as we must consider the evidence in a light most favorable to the prosecution, *see People v. Wolfe*, 440 Mich. 508, 515, 489 N.W.2d 748 (1992) ("[T]his Court determined long ago that when an appellate court reviews the evidence supporting a conviction, factual conflicts are to be viewed in a light favorable to the prosecution[.]"), and view every reasonable inference in favor of the jury verdict. We conclude that from this evidence, an inference may be fairly drawn that defendant was the initial aggressor and not the victim, as defendant had claimed.
>
> Evidence of defendant's conflicting statements and that he was the initial aggressor allowed the jury to infer that he acted without provocation and in a cool state of mind rather than on impulse when his assaultive conduct escalated from striking the victim in the head with a coffee mug to gaining control of a kitchen knife, to punching the victim in the face, to finally stabbing the victim 29 times to her death. *See Holmes*, 111 Mich. at 372, 69 N.W. 501 ("[W]henever murder is intentionally committed, without serious provocation, and under circumstances which do not reasonably account for such an excitement of passion as naturally deprives men of deliberation, common experience teaches us that such an act is wanton, and its perpetrator responsible for it, as in other cases of cold-blooded crime."). An inference of each element of premeditation and deliberation may be drawn from this evidence—that is, defendant thought about killing the victim before proceeding

to kill the victim, and defendant measured and evaluated his choices before proceeding to kill the victim.

By defendant's own admission, these acts were distinct and separate from one another. While we are incapable of pinpointing the exact moment defendant thought about killing the victim and measured and evaluated his choices, the inference may be drawn that his decision to kill the victim and his evaluation of his options arose separately before he obtained a lethal weapon. It is possible defendant may have thought about the killing before first striking the victim over the head with a coffee mug or when he punched the victim in the face. Either way, both acts support the inference that defendant had and took time for reflection before proceeding to stab the victim.

That is because defendant had to think about obtaining the knife—a lethal weapon—to accomplish his desired act of killing the victim. The prosecution argued that defendant may have retrieved the knife from the victim's kitchen, while defendant told the police that he obtained the knife from the victim herself after struggling with her for it. Either way, a period of time between the initial homicidal intent and the ultimate killing existed, during which defendant could have taken a "second look." *See, e.g., People v. Waters*, 118 Mich. App. 176, 187, 324 N.W.2d 564 (1982) (finding that an inference could be made that the formation of the homicidal intent occurred between the time that the defendant drew the weapon from his waistband and the instant he pulled the trigger).

Likewise, it is reasonable to infer that defendant had the opportunity for a "second look" during the period of time that elapsed when he flipped the victim over to position her face down on the floor, climbed onto her back, and then continued to stab her. It took thought and reflection to flip the victim over, permitting an inference that defendant acted with both premeditation and deliberation. Moreover, the location and depth of the victim's stab wounds support an inference that defendant thought about, measured, and evaluated his options. Many of the stab wounds were anywhere from 2 to 5 inches deep, which would indicate the amount of force used to not only plunge the knife into the victim's body, but also to retract it. Given the amount of effort expended for these particular stab wounds, it was reasonable for the jury to infer that sufficient time existed between each stab wound to allow defendant the opportunity to take a "second look." Therefore, given the record evidence, which reveals that defendant's action escalated from physically assaultive conduct to the repeated use of a lethal weapon over an unspecified interval of time, we conclude that a reasonable juror could have found that the killing was committed with premeditation and deliberation.

Our holding is consistent with *Hoffmeister* as we do not hold today that the sheer number of stab wounds alone established the elements of premeditation and deliberation. *Cf. Hoffmeister*, 394 Mich. at 159, 229 N.W.2d 305 ("The brutality of a killing does not itself justify an inference of premeditation and deliberation. 'The mere fact that the killing was attended by much violence or that a great many wounds were inflicted is not relevant (on the issue of premeditation and

deliberation), as such a killing is just as likely (or perhaps more likely) to have been on impulse.'") (citation omitted). Rather, we hold that the jury could reasonably infer and find from the factual record—separate and distinct from the sheer number of stab wounds alone—that defendant had an opportunity to subject his actions to a "second look," and therefore acted with premeditation and deliberation. *See Tilley*, 405 Mich. at 45-46, 273 N.W.2d 471. We emphasize that the application of such principles may vary from case to case because the inquiry is highly dependent on the facts of each case. However, the fundamental principles remain the same— sufficient evidence must exist to support each element of first-degree premeditated murder.

*Oros*, 917 N.W.2d at 567-70 (footnotes omitted).

The court of appeals panel members and the dissenting supreme court justices, however, applied the same standard.[2] They, too, identified the elements of the offense, viewed the evidence in a light favorable to the prosecution, and drew reasonable inferences in the same light; yet, they reached a different result. At a minimum, this circumstance supports the conclusion that reasonable jurists might debate whether there was sufficient evidence of premeditation and deliberation. Because Petitioner's sufficiency argument is simply a restatement of the court of appeals opinion and the supreme court dissenting opinion, understanding how application of the standard in those opinions led to a different result provides some insight into whether the respective applications were reasonable.

The key differences between the majority supreme court opinion and the other opinions lies in the majority's conclusions that: (1) the *Hoffmeister* decision did not preclude inferring premeditation from the nature and number of stab wounds; and (2) the jury could reasonably infer premeditation from the nature and number of wounds. The other opinions concluded that *Hoffmeister* precluded inferring premeditation from the nature and number of stab wounds and, also, that inferring premeditation from those facts would not be reasonable.

---

[2] *Oros*, 904 N.W.2d at 214, (citing *Wolfe*, 489 N.W.2d at 751) (citing *Jackson v. Virginia*); *Oros*, 917 N.W.2d at 570-71 (citing *Jackson v. Virginia*).

12

Because Petitioner's sufficiency argument tracks the analysis of the court of appeals and the dissenting justices, it depends on the definition of premeditation under state law. The supreme court majority's determinations regarding the elements of the crime—what it means to premeditate a killing—are axiomatically correct. It is the prerogative of the state to define the elements of the crime and that definition binds the federal courts. *See Johnson v. United States*, 559 U.S. 133, 138 (2010) ("We are, however, bound by the Florida Supreme Court's interpretation of state law, including its determination of the elements . . . ."); *Jackson*, 443 U.S. at 324 n.16 ("The respondents have suggested that this constitutional standard will invite intrusions upon the power of the States to define criminal offenses. Quite to the contrary, the standard must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law."). Therefore, that part of Petitioner's insufficiency argument centered on *Hoffmeister* and the meaning of "premeditated" is meritless because the Michigan Supreme Court has conclusively resolved those issues against Petitioner.

At least some part of Petitioner's sufficiency argument goes beyond the meaning of "premeditated" to the further determination as to whether premeditation is a reasonable inference that the jury might draw from the nature and number of stab wounds here. Determining whether an ultimate fact can be reasonably inferred from the evidence is part and parcel of the *Jackson* standard. *Jackson* holds that it is the jury's province to draw reasonable inferences from basic facts to ultimate facts. *Id*, 443 U.S. at 319. *Jackson*, however, does not define "reasonable inference."

In *Coleman v. Johnson*, 566 U.S. 650 (2012), the Supreme Court provided guidance "in determining what distinguishes a reasoned inference from 'mere speculation.'" *Id*. at 655. The Court described a reasonable inference as an inference that a rational jury could make from the

facts. Certainly, the inference identified by the supreme court—that the nature and number of the victim's stab wounds permitted an inference that Petitioner deliberated and premeditated the killing—could rationally flow from the underlying facts. The inference is not compelled by those facts. The inference may not even be more likely than not. It is simply rational. *Id*. at 656. To succeed in his challenge, Petitioner must show that the identified inference is irrational. Or, in the parlance of federal habeas review, he must show that the state court's determination that the inference is reasonable is contrary to, or an unreasonable application of, *Coleman*.

He has not made that showing. His showing that other inferences might follow from the nature of the victim's injuries—inferences that favor him—is immaterial. He has not identified any United States Supreme Court case that resolves the issue differently on a set of materially indistinguishable facts. Accordingly, Petitioner is not entitled to habeas relief on his sufficiency claim.

Some part of Petitioner's sufficiency claim is distinct from the reasonableness of the premeditation inference. He suggests a sufficiency weakness in the jury's verdict because the jury did not credit the evidence regarding self-defense or other possible mitigating evidence regarding Petitioner's intent.

Under Michigan law, self-defense is an affirmative defense. *See People v. Dupree*, 788 N.W.2d 399, 405 (Mich. 2010). "An affirmative defense, like self-defense, 'admits the crime but seeks to excuse or justify its commission. It does not negate specific elements of the crime.'" *People v. Reese*, 815 N.W.2d 85,101 n.76 (Mich. 2012) (quoting *Dupree*, 788 N.W.2d at 405 n.11). Although a prosecutor is required to disprove a claim of self-defense under state law, *People v. Watts*, 232 N.W.2d 396, 398 (Mich. Ct. App. 1975), "[p]roof of the nonexistence of . . . affirmative defenses has never been constitutionally required," *Smith v. United States*, 568 U.S. 106, 110

14

(2013) (quoting *Patterson v. New York*, 432 U.S. 197, 210 (1977)). Thus, the Constitution did not require the prosecution in Petitioner's case to disprove self-defense beyond a reasonable doubt. *See Gilmore v. Taylor*, 508 U.S. 333, 359 (1993) (Blackmun, J., dissenting) ("In those States in which self-defense is an affirmative defense to murder, the Constitution does not require that the prosecution disprove self-defense beyond a reasonable doubt."); *Martin v. Ohio*, 480 U.S. 228, 233-36 (1987) (rejecting claim that putting burden on defendant to prove self-defense is unconstitutional); *see also Allen v. Redman*, 858 F.2d 1194, 1197 (6th Cir. 1988) (explaining that habeas review of sufficiency-of-the-evidence claims is limited to elements of the crimes as defined by state law and citing *Engle v. Isaac*, 456 U.S. 107 (1982), and *Duffy v. Foltz*, 804 F.2d 50 (6th Cir. 1986)).

Put another way, "the due process 'sufficient evidence' guarantee does not implicate affirmative defenses, because proof supportive of an affirmative defense cannot detract from proof beyond a reasonable doubt that the accused had committed the requisite elements of the crime." *Caldwell v. Russell*, 181 F.3d 731, 740 (6th Cir. 1999). In raising this challenge, Petitioner "has only faulted the jury's refusal to credit his proffered affirmative excuse or justification" for his conduct. *Id.* Thus, any claim that the prosecutor failed to disprove his affirmative defense is merely a state-law claim that is not cognizable on habeas review. *Id.*; *Redman*, 858 F.2d at 1200.

Petitioner's argument regarding the jury's failure to credit evidence that mitigates his intent to kill fails for a similar reason. The jury's rejection of mitigating evidence is simply the flipside of the decision to credit the premeditation evidence. In so arguing, Petitioner is asking the Court to make its own assessments regarding credibility, to view the evidence in a light that favors Petitioner, and to draw inferences from that evidence that are contrary to the inferences the

jury clearly drew when it found Petitioner guilty of premeditated killing. Petitioner's argument turns the *Jackson* standard on its head. As explained above, the Michigan Supreme Court's determination that there was sufficient evidence to support the jury's verdict on the charge of premeditated murder is a reasonable application of clearly established federal law. Accordingly, Petitioner is not entitled to habeas relief.

## Conclusion

In light of the foregoing, the Court will summarily dismiss Petitioner's application pursuant to Rule 4 because it fails to raise a meritorious federal claim.

## Certificate of Appealability

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This Court's dismissal of Petitioner's action under Rule 4 of the Rules Governing § 2254 Cases is a determination that the habeas action, on its face, lacks sufficient merit to warrant service. It would be highly unlikely for this Court to grant a certificate, thus indicating to the Sixth Circuit Court of Appeals that an issue merits review, when the Court has already determined that the action is so lacking in merit that service is not warranted. *See Love v. Butler*, 952 F.2d 10, 15 (1st Cir. 1991) (it is "somewhat anomalous" for the court to summarily dismiss under Rule 4 and grant a certificate); *Hendricks v. Vasquez*, 908 F.2d 490, 492 (9th Cir. 1990) (requiring reversal where court summarily dismissed under Rule 4 but granted certificate); *Dory v. Comm'r of Corr. of New York*, 865 F.2d 44, 46 (2d Cir. 1989) (it was "intrinsically contradictory" to grant a certificate when habeas action does not warrant service under Rule 4); *Williams v. Kullman*, 722 F.2d 1048, 1050 n.1 (2d Cir. 1983) (issuing certificate would be inconsistent with a summary dismissal).

The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466, 467 (6th Cir. 2001) (per curiam). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Consequently, this Court has examined each of Petitioner's claims under the *Slack* standard. Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims. *Id.*

Although reasonable jurists might debate whether there was sufficient evidence to support a reasonable inference of premeditation here, reasonable jurists would not debate whether the Michigan Supreme Court's application of *Jackson v. Virginia* was contrary to, or an unreasonable application of, clearly established federal law. Therefore, the Court finds that reasonable jurists could not conclude that this Court's dismissal of Petitioner's claims was debatable or wrong and the Court will deny Petitioner a certificate of appealability.

The Court will enter a judgment and order consistent with this opinion.

Dated: August 16, 2019    /s/ Paul L. Maloney
                                                    Paul L. Maloney
                                                    United States District Judge